[Crim. No. 7751.  Second Dist., Div. Three.  Dec. 27, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. ROY ANTHONY BELL, Defendant and Appellant.

Roy Anthony Bell, in pro. per., for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

THE COURT.—Roy Anthony Bell was accused by information in Count I of the crime of robbery, while armed with a deadly weapon, and in Count II of the crime of solicitation to commit robbery. In a jury trial he was represented by the public defender and was found guilty on both counts. The robbery was found to be of the first degree, probation was denied and sentence to state prison was imposed. He appeals in propria persona from the judgment.

Defendant applied for appointment of counsel on the appeal; we read the record, determined that the appeal was groundless, denied the application, notified defendant, allowed him time for filing a brief and none has been filed.

There was evidence of the following facts. On December 12, 1960, Randy Jean and Elbert Martin, employes of Caroline Lanes Bowling Alley, were starting to lock up the receipts from the bowling alley and cocktail lounge. As they were entering the office Jean noticed defendant and his accomplice coming down the hallway. Armed with pistols the two men entered the office, pushing Martin and ordering him to lie down on the floor. Jean was ordered to place three bank bags containing about $1,500 of register receipts on the floor and to lie down next to Martin. Defendant asked how to get the key to the safe and started kicking Martin and Jean. Not being able to get the key, Bell and his accomplice left the office with the money, stating they would find the manager and get the key from him. After several moments Jean and Martin got up from the floor and called the police.

Approximately six weeks later Jean went to the police station and identified Bell as one of the robbers. Also at the trial he identified him and testified that two guns shown him were of the type of guns used by the robbers. The guns had been found in Bell's car when he was arrested. Martin described the robbery but testified he did not see the faces of the robbers.

About six months before the robbery, Officers Hahn and Pacheco were parked at the Wich Stand Drive-In. They were dressed in plain clothes. Bell was parked next to them and asleep on the front seat of his car. An officer from a patrol car woke him up. Bell made several derogatory remarks about police officers after the patrol car had left and then engaged in a conversation with Officer Hahn. Bell told Hahn that he had had several contacts with the police and all of them were bad. Hahn stated that he "had quite a bit of contact with the police department" himself. Bell stated he had pulled several jobs and asked Hahn if he would be interested in "pulling a job." Hahn stated he would, introduced himself as George, and gave Bell the inside phone number of the police vice office. This number is answered with "hello" and there is no indication that the phone is used by the police.

On December 30, 1960, Bell called on the private line at the vice office and asked for George. Officer Hahn was given the call and defendant identified himself as the person whom Hahn had met at the Wich Stand several months earlier. Bell asked if Hahn was still interested in pulling a job and Hahn said he was interested. Bell arranged to meet Hahn that evening to discuss the details. Officers Hahn and Pacheco met defendant at a cocktail lounge. Bell discussed and drew some plans for robbing a Brinks' armored car, showing where it would be at different times, and explained in detail what he wanted Hahn and Pacheco to do in assisting in the robbery. Defendant told them he had pulled several jobs, including the robbery of the Caroline Lanes Bowling Alley in which about $1,600 was taken. After they finished discussing the proposed robbery they went outside to get defendant's car, intending to drive to the place where they would rob the Brinks' car. In the parking lot the officers arrested defendant. Bell's car was taken to the station and searched, revealing a Bank of America money bag, a .32 caliber automatic and another type pistol. At the police station Bell drew a plan of the proposed robbery and explained how he was going to commit it. A recording was made without Bell's knowledge of his remarks and admissions to officers at the police station.

At the trial Bell denied robbing or ever being at the Caroline Lanes. He denied asking Officer Hahn if he would like to pull a job at the time of their first meeting in July 1960. He claimed that the only reason he called Hahn on December 30 was that he wanted to talk to him, that Hahn was a friendly person. He also testified he had been drinking for

five or six hours before the officers arrived, was intoxicated, and that Hahn continued to buy him drinks. As to the plan to hold up a Brinks' car, he testified that it was only loose talk, and that he did not intend to do it; that he was only joking, while the officers seemed to be serious and were encouraging the robbery.

The positive identification by Jean of defendant as one of the robbers, his testimony that some $1,500 was taken, defendant's admission to the officers that he was one of the robbers and that they took about $1,600 from the presence of Jean and Martin constituted convincing evidence of defendant's guilt of the robbery. In view of this evidence the sufficiency of the evidence to justify the verdict on the robbery count is eliminated as a question of law.

There was also ample evidence that defendant solicited the officers to join him in the commission of a robbery. The sketch which he drew for them contained a description of a Brinks' armored truck which defendant stated he had followed on many occasions and examined closely. He explained each detail of the proposed operation. He was in possession of two loaded guns and assured himself that the officers carried guns. It was a question for the jury whether it was his intention to go through with the robbery if the officers had been willing to participate in it. His explanation that he was joking was unconvincing. It would have been strange indeed if the jurors had believed defendant's denials.

Upon inquiry of the deputy public defender who represented defendant at the trial, we have been informed that in his opinion there were no errors of law committed during the trial, no improper argument made by the deputy district attorney and no error or inadequacy in the matter of the instructions to the jury.

The judgment as to each count of the information is affirmed.